IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**July 31, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JOSHUA S.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-397**    (Fam. Ct. Berkeley Cnty. Case No. FC-02-2017-D-441)

**SARA O.,**
**Petitioner Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Joshua S.[1] ("Father") appeals the Family Court of Berkeley County's August 29, 2025, Final Custodial Allocation and Child Support Modification Order which modified the parties' parenting plan and awarded primary custodial allocation of the parties' oldest minor child to Father, granted Respondent Sara O. ("Mother") more than an equal (50-50) physical custodial allocation of the three youngest children, and modified Father's child support obligation. Mother filed a response in support of the family court's order.[2] Father filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds there was error, but no substantial question of law. For these reasons, a memorandum decision affirming, in part, vacating, in part, and remanding the family court's order entered August 29, 2025, is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties were married in 2006 and divorced in 2018. They share five children, the oldest of whom was emancipated prior to the current action; the next oldest, who became emancipated while this appeal was pending, was a minor during the proceedings below; and three minor children. Since the parties' divorce, there has been an extensive history of litigation resulting in multiple modifications of their parenting plan, regular status hearings, and the involvement of a parenting coordinator. We will provide an abbreviated background of this case's history.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Both parties are self-represented.

In 2020, Mother had primary custodial allocation of all five of the children and Father received approximately ten overnights per month. During this time period, the oldest two children were permitted to go to Father's home at their discretion. Subsequently, CPS investigated Father on three occasions for allegations of abuse between February 2020 to December 2023, all of which were unsubstantiated. Also, during this time, the family court ordered a Parenting Plan Home Study, which was completed between November of 2020 and February of 2021.

The family court modified the parenting plan in August of 2022, limiting Mother's parenting time for the three youngest children to alternating weekends. The oldest two children remained primarily with Mother and Father's parenting time was at the children's discretion. Decision-making for the oldest two children was to be shared by the parties, while Father was granted sole decision-making for the youngest three children. The family court took judicial notice in the August 2022 order that it has "previously found that [Mother had] engaged in a pattern of parental alienation that has impaired [Father's] ability to sustain an appropriate parent/child relationship with the parties' minor children."

Father filed a petition for modification in March of 2023, that resulted in a final hearing in April of 2024. The parties presented conflicting expert testimony regarding the continued allegations of parental alienation perpetrated by Mother. In its June 2024 order, the family court[3] acknowledged the court's previous rulings that indicated Mother's conduct constituted parental alienation and went on to find that there was sufficient evidence that Father was behaving in a manner that "exacerbate[d] the children's loyalty bind." The family court was more persuaded by Mother's expert who did not believe there was parental alienation but did believe there was "clearly high conflict between the parties." The family court modified the custodial allocation for the three youngest children by increasing Mother's custodial time to three overnights per week and granting joint decision-making, with Father having final say if the parties disagreed. Mother obtained sole decision-making for the oldest two children and maintained full physical custodial allocation with Father's parenting time to be at the children's discretion. The parties were also ordered to engage in co-parenting counseling and the family court appointed Mother's witness regarding parental alienation as the parenting coordinator for the parties.

The family court held a status hearing in October 2024. Witnesses included the parties, the parenting coordinator, and the therapists for the three youngest children.[4] Mother requested that the parties resume an equal custodial schedule for the three youngest children. Father stated an objection to Mother's request. Mother indicated she would like

_____

[3] In November of 2022, this case was assigned to a different family court judge than the judge who presided over the case from its onset and made findings regarding parental alienation against Mother.

[4] Each of the three youngest children had a separate therapist from the same practice.

a week-to-week schedule with one exchange per week. Father agreed that a week-to-week schedule with one exchange would be easier. The family court issued a temporary order on December 2, 2024, modifying physical custody of the three youngest children to an equal (50-50) custodial allocation. The court did not modify the custodial arrangement of the second oldest child, who resided solely with Mother. At this point, the oldest child had reached the age of majority.

In January 2025, the parties' oldest minor child decided to live with Father, after several years of very minimal contact with Father, to which Mother agreed. On April 10, 2025, Father filed a petition to modify custodial allocation and child support to reflect this change and requested the child support modification be retroactive either to date of petition or date when the oldest minor child began living with him. Mother filed an answer and counter-petition for modification. On June 23, 2025, the family court held a final hearing on both parties' petitions. Prior to the hearing, the family court conducted an in-camera interview with the oldest minor child. During the hearing, the family court heard testimony from both parties, the parenting coordinator, the mental health therapists for each of the youngest three minor children, and the parties' oldest, adult child. The family court overruled Father's objection to the testimony of their oldest child, and denied Father's request for a subsequent hearing to call rebuttal witnesses to contradict the testimony of their oldest child.[5]

Father also requested a Guardian ad Litem ("GAL") be appointed, especially for the oldest minor child. The family court declined to appoint a GAL and stated that the child also had a therapist who could have testified, and that the court recently conducted an in-camera interview with the child. The family court then scheduled an in-camera interview with the second oldest minor child, who was over the age of fourteen, to determine that child's custodial preference. The family court deferred ruling on the parties' petition until after its in-camera interview with the second oldest minor child. On August 29, 2025, the family court issued its Final Custodial Allocation and Child Support Modification Order.

In its order, the family court modified the parties' previous order by: (1) granting Father primary custodial responsibility of the oldest minor child with Mother exercising custodial time with the child at the child's discretion; (2) granting Mother primary custodial responsibility of the three youngest children; (3) modifying the parties' custodial allocation of the second oldest minor child (third oldest child) making Father's custodial time with that child at the child's discretion; (4) modifying the parties' custodial allocation of the two youngest children to Father exercising custodial time with those children on alternating weekends; and (5) reducing Father's monthly child support obligation owed to Mother to $658.00 effective September 1, 2025. The family court's findings of fact included limiting

---

[5] Father's proposed rebuttal witnesses were the oldest child's previous therapist and another mental health counselor who previously worked with the children.

factors under West Virginia Code § 48-9-209(f)(6)-(7)[6] as reasons to deviate from the presumption of an equal (50-50) custodial allocation for the youngest three children. It is from this order that Father now appeals.

For these matters, we use the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

"In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the . . . court makes a serious mistake in weighing them." *Shafer v. Kings Tire Serv., Inc.,* 215 W. Va. 169, 177, 597 S.E.2d 302, 310 (2004) (citation omitted). Further, "[q]uestions relating to . . . custody of the children are within the sound discretion of the [family] court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols,* 160 W. Va. 514, 236 S.E.2d 36 (1977). "Thus, a family court's decision is entitled to significant deference. Absent an abuse of discretion, this Court must refrain from substituting its judgment for that of the family court, even if this Court might have decided a case differently." *Amanda A. v. Kevin T.,* 232 W. Va. 237, 245, 751 S.E.2d 757, 765 (2013).

---

[6] West Virginia Code § 48-9-209 states, in part, that:

(f) In determining whether the presumption for an equal (50-50) allocation of physical custody has been rebutted, a court shall consider all relevant factors including any of the following:
. . .
    (6) Whether the parents cannot work cooperatively and collaboratively in the best interest of the child; or
    (7) Whether a parent will encourage and accept a positive relationship between the child and the other parent, including which parent is more likely to keep the other parent involved in the child's life and activities.

At the outset, this Court points out that we are limited in our review to the record developed before the family court, and we will not address matters not presented to the family court. *See City of Huntington v. Chesapeake & Potomac Tel. Co.*, 154 W. Va. 634, 639, 177 S.E.2d 591, 595 (1970) (declining to address matter not decided by lower court); *Shaffer v. Acme Limestone Co., Inc.,* 206 W. Va. 333, 524 S.E.2d 688 (1999); *Whitlow v. Bd. of Educ. of Kanawha Cnty.,* 190 W. Va. 223, 438 S.E.2d 15 (1993) ("Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal."); *PITA, LLC v. Segal,* 249 W. Va. 26, 894 S.E.2d 379 (2023) (noting that as a general rule, an appellate court will not consider an issue raised for the first time on appeal); *see also* W. Va. R. App. P. 6(a) ("The record on appeal consists of the documents and exhibits filed in the proceedings in the lower tribunal[.]"). Father's brief contains arguments about proceedings with the parenting coordinator that occurred outside of the family court and took place after the family court's order on appeal. Also, Father's appendix record contains documents that were not included in the record below. To the extent that Father relied on this information in his arguments, this Court did not take it into consideration when making our decision.

On appeal, Father asserts six assignments of error. Because some of his assignments of error are similar, we will consolidate and restate them for clarity and efficiency.

First, Father argues that the family court violated his right to due process by not allowing him to call witnesses to rebut testimonial evidence that the family court had previously found to be the product of parental alienation. The testimony in question is that of the parties' oldest child, who is now an adult. Mother called that child as a witness, over Father's objection, and Father declined to cross-examine that child. We decline to find that the family court abused its discretion or committed error by allowing the testimony of the parties' oldest child and denying Father's request to schedule an additional hearing for the purpose of calling witnesses to attempt to rebut that testimony.

Father had notice of the final hearing and an opportunity to subpoena witnesses, along with the ability to cross-examine the parties' oldest child, but Father declined to do so. In response to Father's objection to the oldest child's testimony, the family court stated that it would "give the testimony the weight it deemed necessary." The family court was aware of prior testimony from Father's proposed rebuttal witnesses, along with its previous findings on the issue of parental alienation. The family court's order does not indicate that the court based its decision on the oldest child's testimony. Instead, the family court stated that it "cannot simply ignore the testimony of the therapists who work so closely with the children who have consistently recommended that [Mother] be given primary custody of [the three youngest children]." Family court judges are given the authority to "manage the business before them," and this Court finds no error in the way the family court managed the parties' case in this respect. *See* W. Va. Code § 51-2A-7(a)(1) (2013). Therefore, Father has failed to demonstrate that it was an abuse of discretion for the family court to allow the

testimony of the oldest child and to deny Father's request for an additional hearing to be scheduled for the sole purpose of calling rebuttal witnesses. Father neglected to subpoena those witnesses to the final hearing and they had previously testified about the same issues. Moreover, those witnesses had not interacted with the parties' adult child since they previously testified earlier.

Father's second and third assignments of error claim that the family court abused its discretion by refusing to appoint a GAL for the children instead relying on uninvestigated allegations of emotional neglect asserted by the therapists for the three youngest children. Father argues that the family court was required to appoint a GAL under West Virginia Code § 48-9-302(c) and Rule 47(a) of the West Virginia Rules of Practice and Procedure for Family Courts due to these allegations. We disagree.

Father claims that because the therapists for the three youngest children made statements in their written reports and testified at the hearing that Father emotionally neglected the children, the family court was then required to appoint a GAL. West Virginia Code § 48-9-302(c) states that:

> [w]hen substantial allegations of domestic abuse have been made, the court shall order an investigation under section 9-301 or make an appointment under subsection (a) or (b)[7] of this section, unless the court is satisfied that the information necessary to evaluate the allegations will be adequately presented to the court without such order or appointment.

Additionally, Rule 47(a) of the West Virginia Rules of Practice and Procedure for Family Courts provides the basis for appointing a GAL by directing that:

> Courts shall not routinely assign guardians ad litem for children in a domestic relations case. Where, however, the court is presented with allegations meeting the statutory definition of domestic violence under W. Va. Code § 48-27-401 and/or abuse and neglect under W. Va. Code § 49-1-201, which create serious issues relating to the child's health and safety, or when a case involves disproving a child's paternity, a guardian ad litem shall be appointed by the court for the child(ren).

Here, the family court determined that a GAL was not necessary due to the involvement of the parenting coordinator. The family court also interviewed the two oldest minor children in-camera and heard testimony from the therapists of the three youngest children, who saw the children on a regular basis for several months. The family court determined that a GAL

---

[7] West Virginia Code § 48-9-302 authorizes the family court to (a) appoint a guardian ad litem to represent the child's best interests or (a) appoint an attorney to represent the child.

6

was not going to provide any information that was not already available to the family court by other means. Moreover, based on the evidence presented, the family court did not make findings that the allegations were sufficient to meet the statutory definition of abuse and neglect which "create serious issues relating to the child's health and safety," which would require the appointment of a GAL. Having reviewed the record, this Court declines to find that the family court abused its discretion by making this determination.

Father also argues that the testimony of the therapists and family coordinator was not reliable or credible, although he points to no specific aspect of their testimony that is contradictory or void of credibility. Instead, Father attacks the witnesses' ethical standards and whether they complied with mandatory reporting requirements. "[A] family court is entitled to deference to the extent it relies on determinations it made of the parties' credibility." *In re C.S.*, 251 W. Va. 147, 152, 909 S.E.2d 819, 824 (2024) (citing *Thomas E. v. Amy F.*, No. 13-0176, 2013 WL 5708438, at *2 (W. Va. Oct. 21, 2013) (memorandum decision)). Further, "[a]n appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact." *In re the Marriage/Child. of Matt N. v. Michele I.*, No. 14-0090, 2014 WL 6724758, at *5 (W. Va. Nov. 25, 2014) (memorandum decision) (citing *State v. Guthrie,* 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995)); *Ford v. Ford,* 25-ICA-243, 2026 WL 688282, at *5 (W. Va. Ct. App. Feb. 27, 2026) (memorandum decision). In this case, the family court weighed the credibility of the parenting coordinator and the multiple therapists, found them to be credible, and reasonably relied on their consistent recommendations that Mother be allocated primary custodial responsibility of the three youngest children. Accordingly, we will not disturb the family court's order.

For his fourth assignment of error, Father contends that the family court abused its discretion by reducing his child support obligation prospectively instead of retroactively and by calculating child support based on Mother's testimony and without verified financial disclosures. We affirm on the issue of Mother's testimony but find error in the family court's prospective modification of child support.

The Supreme Court of Appeals of West Virginia has held that "[t]he authority of a family court to modify a … child support award is prospective only and, absent a showing of fraud or other judicially cognizable circumstances in procuring the original award, a family court is without authority to modify or cancel accrued … child support installments." Syl. Pt. 2, *Hayhurst v. Shepard*, 219 W. Va. 327, 633 S.E.2d 272 (2006).[8] However, Rule 23 of the Rules of Practice and Procedure for Family Court states, "[e]xcept

---

[8] We note that the relevant issue in *Hayhurst* was that a party sought to retroactively modify child support wherein a petition to modify had never been filed. *See id.* at 331, 633 S.E.2d at 276.

for good cause shown, orders granting relief in the form of . . . child support shall make such relief retroactive to the date of service of the motion for relief."

Upon review of the record, Father filed a petition to modify custodial allocation of the oldest minor child and child support on April 10, 2025. The family court modified the parties' allocation of custodial responsibility to reflect that Father would have primary custodial allocation of the oldest minor child, and that Mother would have primary custodial allocation of the other three children, thus, ordering split custody. The family court then recalculated child support at the hearing to reflect the change in custodial allocation, which reduced Father's monthly child support obligation. The court ordered the modification of child support in conjunction with the change in custodial allocation, making the new custodial allocation effective September 2, 2025, and the new child support obligation, September 1, 2025. Pursuant to Rule 23 of the Rules of Practice and Procedure for Family Court, the family court was required to set the effective date of the modified child support to the date of service of Father's motion, absent a showing of good cause. Accordingly, we conclude that the family court erred in setting the new child support effective date as September 1, 2025. On remand, the family court is instructed to enter an order changing the effective date or making a finding that good cause exists.

Further, we find no error in the family court's reliance on Mother's sworn testimony as to her income for the purpose of calculating child support. As stated previously, the family court has the authority to make credibility determinations and determined that Mother's testimony that her income had not changed since her previous financial disclosure was credible. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 408-09, 801 S.E.2d 282, 286-87 (2017) ("It is within the sole province of the family court, as fact-finder, to decide issues of credibility, and this Court will not disturb those determinations."). Father has not alleged that the child support calculation was incorrect, that Mother's testimony regarding her income was false, or that he was prejudiced by the family court's reliance on Mother's testimony. Instead, Father argues that Mother was required to file a verified financial statement under Rule 13(a) of the West Virginia Rules of Practice and Procedure for Family Court and failed to do so. If any error exists, we find it to be harmless because Father failed to show on appeal how his rights were adversely affected by the alleged error. *See William M. v. W. Va. Bureau of Child Support Enf't*, No. 20-0620, 2021 WL 3833867, at *3 (W. Va. Aug. 27, 2021) (memorandum decision) (finding alleged error by family court harmless where petitioners failed to show that they suffered prejudice or had their substantial rights adversely affected by alleged error).

Next, Father alleges that the family court erred by substituting its subjective judgment for statutory analysis, which created the appearance of partiality, and that the family court failed to neutrally reconcile contradictory evidence. Father requested that future proceedings be conducted by a different family court judge to preserve the appearance of impartiality. We do not find merit in this argument.

8

First, a party contending judicial bias would generally seek disqualification of the offending judge, pursuant to Rule 58 of the Rules of Practice and Procedure for Family Court. No motion for disqualification of the family court judge was filed below. *See Katelin C. v. Donovan C.*, No. 24-ICA-473, 2025 WL 2240293, at *3 (W. Va. Ct. App. Aug. 6, 2025) (memorandum decision). "As noted in Rule 58, which references Rule 17 of the Trial Court Rules, decisions regarding disqualification of judges are made by the Chief Justice of the SCAWV and are not the province of this Court." *In re C.S.*, 251 W. Va. 147, 151-152, 909 S.E.2d 819, 823-824 (Ct. App. 2024). This court has said that "to prevail on a claim of bias, at a minimum, [a party] must substantiate [their] claim of bias or prejudice." *Xerxes R. v. Richard P.*, No. 24-ICA-76, 2024 WL 5003524, at *5 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision). In this case, Father did not substantiate his claim of bias and has not established that his due process rights were violated during the proceedings.

Furthermore, the family court made specific findings of fact and conclusions of law that analyzed the evidence before it and the applicable statutory requirements when reaching its decision. It appears that Father simply disagrees with the family court's findings. Father contends that the family court's language in the order on appeal is more critical and negative toward him than to Mother. This Court's review of the record and recording of the June 23, 2025, hearing, finds no evidence of judicial bias, prejudice, or partiality toward one party over the other. Therefore, we do not agree that the family court acted biased against Father.

Finally, Father maintains that the cumulative effect of his previous assignments of error deprived him of his due process rights and thus requires this Court to reverse the decision of the family court. Because Father failed to establish error or abuse of discretion by the family court in those previous assignments of error, this argument fails.

Accordingly, we affirm, in part, vacate, in part, and remand the Family Court of Berkeley County's August 29, 2025, Final Custodial Allocation and Child Support Modification Order.

Affirmed, in part, Vacated, in part, and Remanded.


**ISSUED:** July 31, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White